J-A27020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.B., MOTHER | : : : : : : | |
| | : | No. 884 MDA 2024 |

Appeal from the Decree Entered May 23, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 009-ADOPT-2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.B., MOTHER | : : : : : : | |
| | : | No. 885 MDA 2024 |

Appeal from the Decree Entered May 23, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 010-ADOPT-2024

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: FEBRUARY 12, 2025**

In this consolidated matter, H.B. (Mother) appeals the decrees issued by the Cumberland County Court of Common Pleas, which terminated her rights to her now nine-year-old daughter, M.B., and six-year-old son, G.B., (collectively, the Children) pursuant to the Adoption Act. *See* 23 Pa.C.S.A. § 2511(a), (b). Additionally, Mother's counsel has filed an application to withdraw and a brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967).

After careful review, we remand for the orphans' court to prepare a supplemental opinion and retain panel jurisdiction.[1,2]

The record reveals that before living in Cumberland County, the family has been involved with Franklin County Children and Youth Services since 2015. In April of 2015, the Children's older siblings were removed from the home due to its condition.[3] There were also other issues including the older siblings' dental needs not being addressed, Mother's prescription drug addiction, and Father's untreated mental health concerns. In October of 2015, M.B. had withdrawal symptoms from prenatal drug exposure. M.B. and her older siblings were ultimately returned to the parents' care. In May of 2019, the Children and the older minor siblings were placed again due to instability. Father eventually regained physical and legal custody of the Children and their siblings.

_____

[1] The court also involuntarily terminated the rights of P.B. (Father), who did not appeal.

[2] The appellee, Cumberland County Children and Youth Services (the Agency), submitted a letter in lieu of a brief and in support of Mother's counsel's application to withdraw and **Anders** brief. The Agency concurred with counsel that Mother's appeal was wholly frivolous and relied on the orphans' court's opinion. The Agency stated "[t]here is no basis in the applicable law or record to support this appeal."

[3] We glean from the record that the Children have five older siblings: three who are no longer minors, one who is in a different placement, and one who passed away in 2014. At the time of this case, none of the other siblings were in Mother's or Father's care.

At some point the family relocated to Cumberland County, and the Agency received an intake in November of 2020 for school attendance. The Children were adjudicated dependent in June of 2022. Father retained legal and physical custody. Mother was incarcerated at the time of the adjudication.

In November of 2022, Alternative Behavior Consultants (ABC) staff found Father stumbling and under the influence of alcohol and prescription drugs at the home. The Children were ultimately removed from Father's care and initially placed in separate foster homes, although M.B. later joined G.B. in his foster home in January of 2023. Both Children have remained there ever since, and the foster home is pre-adoptive. At the time of removal, Mother was in a halfway house and could not care for the Children.

After removal, Mother's goals included: maintaining stable housing; complying with the Agency to visit the Children; addressing mental health, parenting, and drug and alcohol concerns; meeting the Children's various needs; and complying with her probation requirements. Mother failed to meet most of these goals.

Mother never had stable or appropriate housing to care for the Children. For the approximately one-and-a-half years from removal to the termination hearing, Mother was either incarcerated, living in a halfway house, living in shelters, or living with Father for a brief period. Mother was incarcerated multiple times, including at some point prior to January of 2021, at the time of the Children's dependency adjudication in June of 2022, and from September 8, 2023 to November 2, 2023. At the time of the termination

hearing, she was reportedly living in a motel with her adult daughter and her daughter's boyfriend. Mother never had housing that the Agency deemed appropriate for reunification.

Mother did not meet her visitation goal; her visitation with the Children was inconsistent. ABC closed Mother's visitation services in May of 2023 because Mother did not show up for visits or did not respond to ABC. As a result, Mother did not have visitation from May of 2023 to January of 2024. Mother was re-referred for visits in January of 2024. From January to May of 2024, fourteen visits were offered. Mother attended seven visits. She missed four consecutive visits immediately before the termination hearing, and three visits were canceled on the Children's behalf.

The visitation coordinator testified that Mother was less engaging than Father was with the Children during visits. The Children were less calm, more reserved, and hesitant with Mother. Mother was also unable to set boundaries with them. There was an incident at a visit where Mother yelled in front of the Children because the Children did not hug her or say "I love you" when they were getting ready to leave. *See* N.T., 5/22/24, at 17. The Children reportedly experienced anxiety and stress around visits. Mother never progressed to unsupervised visitation.

Mother did not meet many of her other goals either. Mother did not attend therapy or mental health counseling outside of medication management. Mother did not engage in parenting services to address her parenting issues, even though multiple referrals were made. Mother did not

- 4 -

make progress with her parenting skills, nor did she demonstrate progress in learning how to care for the Children. Mother was notified of all the Children's medical and dental appointments, but she did not attend any of them. The Agency also felt that Mother was very hard to contact. Mother did not provide care or support for the Children, nor did she have contact with them outside of visits. Mother never asked for updates on the Children between visits. Overall, Mother met only two goals: she complied with the conditions of her probation, and she was successfully discharged from drug and alcohol treatment.

Ultimately, the Agency petitioned to terminate Mother's and Father's parental rights, and the orphans' court held a termination hearing on May 22, 2024. The ABC visitation coordinator, the Agency caseworker, the Children's foster mother, and Father testified; the Children also testified in chambers. Mother did not attend the hearing.[4] The Children indicated that they wanted to live with their foster parents and did not like going to visits with their biological parents.

Specifically, G.B. testified that he did not want to go to visits because Mother pulled his leg sometimes which hurt him. He also stated that he did not want to live with Father and Mother because they were "a little bit mean" and that he wanted to stay with his foster parents. *See* N.T. at 78. M.B. testified that she felt bad about going to visits with Mother and Father because

---

[4] The record indicates that Mother had actual notice of the hearing, per the testimony of the Agency caseworker and Father.

Mother grabbed her and gave her a bruise. She also stated that she did not feel safe with Mother and Father because she wondered if they might smack her again. Conversely, she felt good and safe with her foster parents. The Children's guardian *ad litem* and counsel both advocated for Mother's parental rights to be terminated.

The orphans' court terminated Mother's and Father's rights to the Children under the Adoption Act and changed the goal to adoption. **See** 23 Pa.C.S.A. § 2511(a), (b); **see also** N.T. at 105. Mother timely appealed the termination but did not appeal the goal change. **See Anders** Brief at 9.

Before we address the merits of Mother's appeal, we note that her counsel has filed a petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[5] To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.
>
> With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must

---

[5] This Court extended the **Anders** principles to appeals involving the termination of parental rights. **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

"attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations omitted).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in *Santiago*:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).

Preliminarily, we find that counsel has substantially complied with the technical requirements to withdraw. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (citation omitted) (observing that substantial compliance with the *Anders* requirements is sufficient).

In addition to verifying that counsel substantially complied with *Anders* and *Santiago*, this Court also must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote and citation omitted). *Flowers* does not require us "to act

as counsel or otherwise advocate on behalf of a party." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). "Rather, it requires us only to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Id.*** Traditionally, we would start our review by giving "a most generous reading and review of 'the case' as presented in the entire record with consideration first of issues raised by counsel." ***See id.*** (citing ***Anders***, 386 U.S. at 744).

The three issues counsel presented in the ***Anders*** brief that arguably support Mother's appeal are as follows:

> 1. Whether the Trial Court abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Mother's] parental rights to [her] [C]hildren under Section 2511(a) of the Adoption Act, 23 Pa.C.S.A. §2511(a).
>
> 2. Whether the Trial Court abused its discretion and committed an error of law in terminating [Mother's] parental rights when the conditions which led to the removal or placement of the [C]hildren no longer existed or were substantially eliminated, thus contravening sections 2511(a) and (b) of the Adoption Act, 23 Pa.C.S.A. §2511(a), (b).[6]
>
> 3. Whether the Trial Court abused its discretion and committed an error of law in determining it would be in

---

[6] This issue states "the conditions which led to the removal or placement of the [C]hildren no longer existed or were substantially eliminated." We note that this issue is more appropriately situated solely within Section 2511(a) as (b) is focused on the "developmental, physical and emotional needs and welfare of the child." ***See*** 23 Pa.C.S.A. § 2511(b).

the [C]hildren's best interest to have parental rights terminated, when [Mother] loves her [C]hildren, and if given sufficient time would be ready, willing, and able to parent the [C]hildren and provide for their needs, thus contravening Section 2511(b) of the Adoption Act, 23 Pa.C.S.A §2511(b).

*Anders* Brief at 4-5.

We review these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search

the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Mother's first and second issues involve the initial prong of the termination analysis under Section 2511(a). Notably, while the Agency

- 10 -

petitioned to terminate Mother's rights under Section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, the orphans' court's decrees do not state under which subsection(s) the court terminated Mother's parental rights. Additionally, the orphans' court did not state under which subsection(s) it was terminating Mother's rights on the record at the termination hearing. However, in its opinion issued pursuant to Appellate Rule 1925(a), the court cited only Section 2511(a)(8).

Section 2511(a)(8) provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

To prove this subsection, the Agency must establish the following three elements: "(1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child." *M.E.*, 283 A.3d at 832 (citation omitted).

Here, the orphans' court determined that the Agency had proven the statutory grounds for termination under Section 2511(a)(8). The court noted:

> We found, by clear and convincing evidence, that 12 months or more had elapsed from the date of placement, the conditions which led to placement continued to exist, and termination best served the needs and welfare of the [C]hildren who need permanency in a parent willing and capable of providing for their needs and evidencing commitment to their welfare. See 23 Pa.C.S. § 2511(a)(8).

Orphans' Court Opinion (O.C.O.), 7/15/24, at 3.

Mother notes that the orphans' court cited only Section 2511(a)(8) in support of its termination decision, and she makes various arguments regarding that decision. However, we need not address Mother's arguments because, as a threshold matter, Section 2511(a)(8) does not apply to Mother here.

The first element of Section 2511(a)(8) requires the Agency to establish that "the child has been **removed from the care of the parent** for at least twelve months." **M.E.**, 283 A.3d at 832 (citation omitted) (emphasis added). Here, the Children were not removed from **Mother's** care because they were in **Father's** care at the time of removal. Specifically, the record reflects that Mother was incarcerated when the Children were adjudicated dependent in June of 2022. **See** Recommendations for Adjudication, 6/22/22, at 1 (noting "The [c]hild's Mother is currently incarcerated") and 2 (noting "[Mother] is currently incarcerated at Franklin County Prison"); **see also** Recommendations Regarding Modification of Child's Placement, 12/2/22, at 2

(noting "[Mother] was incarcerated at the time of adjudication"). Following adjudication, **Father** retained physical and legal custody of the Children. ***See*** Recommendations for Adjudication, 6/22/22, at 1, 3 (noting that legal and physical custody of the Children were to remain with Father); ***see also*** Recommendations for Disposition, 8/1/22, at 1, 3 (same).

Accordingly, when the Children were then removed in November of 2022, they were removed from Father's care, not Mother's care. ***See*** Recommendations Regarding Modification of Child's Placement, 12/2/22, at 2 (noting "The children were removed from the care of [Father] by emergency protective custody order on 11/04/2022"). At the time of removal, Mother was living in a halfway house where she could not care for the Children. ***See*** Confirmations of Verbal Order for Emergency Protective Custody, 11/9/22, at 1 (noting "[Mother] is residing in a transitional living home and is unable to care for the children at this time."); ***see also*** Recommendations Regarding Modification of Child's Placement, 12/2/22, at 2 (noting "[Mother] was incarcerated at the time of adjudication and is currently residing in a halfway house where she cannot have the children returned to her care."). Additionally, the Agency caseworker testified at the termination hearing that when the Agency became involved with the family this most recent time, the Children were living with Father, not Mother. ***See*** N.T. at 56. When asked if he knew if Mother had ever had primary custody of the Children, the caseworker responded, "I do not believe so." ***Id.***

Because the Children were not in Mother's care or custody at the time of removal, they could not be removed from Mother's care. Thus, Section 2511(a)(8) does not apply to Mother in this case. ***See, e.g., In re C.S.***, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (holding that termination under Section 2511(a)(5) and (8) was not appropriate where the record reflected that the child was never in the father's care and, therefore, could not have been removed from his care as the father was incarcerated when the child was removed); ***Interest of P.N.M.***, 264 A.3d 383 (Pa. Super. 2021) (unpublished memorandum) (noting "Even if Mother did not waive her claims, we would conclude that termination under Section 2511(a)(5) and (8) was improper. Those subsections require, in part, that the child be removed from the care of the parent. The [c]hildren here were removed from the care of [f]ather, not [m]other.").

Section 2511(a)(5) also does not apply to Mother in this case for the same reason. ***See C.S.***, 761 A.2d at 1200. The first element of Section 2511(a)(5) is that "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months." 23 Pa.C.S.A. § 2511(a)(5). As above, because the Children were not in Mother's care at the time of removal, the first element of Section 2511(a)(5) cannot be established in this case.

We acknowledge that Mother's counsel stated in the ***Anders*** Brief, "it is admitted the [C]hildren had been removed from Mother's care for a period in

excess of 12 months." *See Anders* Brief at 12. Mother appealed the orphans' court's decision under Section 2511(a) and made arguments related to (a)(8), but did not question the applicability of (a)(8). However, we note our obligation in *Anders* cases requires us to "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Flowers*, 113 A.3d at 1250 (footnote and citation omitted). The applicability of Section 2511(a)(8) is a non-frivolous issue in this case. Given counsel's application to withdraw and this Court's independent *Anders* obligation, we do not consider counsel's statement as a concession on Mother's behalf. *Cf. Interest of J.M.*, 219 A.3d 645, 650, n.3 (Pa. Super. 2019) (noting this Court declined to view counsel's statement made in response to an order to show cause as a concession on the mother's behalf where counsel was seeking to withdraw under *Anders*).

The inapplicability of Sections 2511(a)(5) and (8) is not dispositive in this case because the Agency also petitioned under (a)(1) and (2). However, the orphans' court failed to make a finding in its opinion regarding Section 2511(a)(1) or (2). We cannot infer if this was an inadvertent oversight by the court or if the court found termination was improper under Section 2511(a)(1) and (2). Our applicable standard of review requires us "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *T.S.M.*, 71 A.3d at 267 (citation and quotation marks omitted). If the factual findings are supported, then we review for an error of law or

abuse of discretion. **See id.** Because the orphans' court did not make any findings or provide analysis regarding termination under Section 2511(a)(1) or (2), our appellate review is impeded. Thus, we need the orphans' court to supplement its opinion and discuss these sections to enable our review of its factual findings.

We also need the orphans' court to elaborate on Section 2511(b), the second part of the bifurcated analysis in termination of parental rights cases. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." **In the Interest of K.T.**, 296 A.3d 1085, 1105 (Pa. 2023) (citations omitted); **see also C.M.K.**, 203 A.3d at 261-62 (the focus of Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the 'primary consideration' must be the child's 'developmental, physical and emotional needs and welfare.'" **K.T.**, 296 A.3d at 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." **Id.** at 1106 (citing **T.S.M.**, 71 A.3d at 267). Recently, our Supreme Court held that this analysis also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. **Id.** (citing **T.S.M.**, 71 A.3d at 268; **In re D.C.D.**, 105 A.3d 662, 677 (Pa. 2014)).

The orphans' court's opinion indicates that it found termination best served the needs and welfare of the Children, but the court only cited Section 2511(a)(8). The third element of (a)(8) involves the needs and welfare of the child, like Section 2511(b). The court stated that both Children competently testified that they wished to remain with their foster parents and do not enjoy visits with Mother or Father due to concerns about how the Children are treated by Mother and Father. O.C.O. at 3. The Children's counsel and guardian *ad litem* both advocated for termination. **Id.** The court noted that "[t]he [C]hildren have been in the care of their foster parents who love them and wish to adopt them." **Id.** The court ultimately determined: "Virtually all evidence regarding the status of the [C]hildren, including this Court's

- 17 -

observations and conversations with them, proved, clearly and convincingly, that their best interests lie in being able to be adopted and remain permanently in the care of their foster parents." *Id.*

However, the orphans' court did not specifically cite to Section 2511(b) in its opinion, nor did it reference that subsection by name in its termination decrees. *See* Final Decrees, 5/22/24 (stating "this [c]ourt finds that sufficient grounds exist, as provided in Section 2511 of the Adoption Act, for the termination of all parental rights"). The orphans' court's opinion also did not specifically mention or analyze the potential bonds, or lack thereof, between the Children and Mother and the Children and their foster parents, as required by our Supreme Court. *See K.T.*, 296 A.3d at 1106 (citations omitted). Additionally, while we do not need to address Mother's various arguments regarding Section 2511(b) at this time, given our disposition, we note that Mother asserted that the orphans' court failed to "consider the bond that the [C]hildren have with [Mother] and the effect that terminating Mother's rights would have on them, and that bond." *Anders* Brief at 14.

While we acknowledge that the orphans' court is not required to use "magic words" in its opinion, it must make clear that all relevant factors were considered under its Section 2511(b) analysis, and that it applied the correct standard in weighing those factors. *See K.T.*, 296 A.3d at 1114. Without a more comprehensive Section 2511(b) analysis, we cannot be sure which factors the orphans' court considered, and, thus, we cannot conduct our

required appellate review of the court's factual findings and credibility determinations. As such, we also need the orphans' court to supplement its opinion and expand on its Section 2511(b) analysis to enable our review.

In sum, we are constrained to remand this matter to the orphans' court for the preparation of a supplemental opinion, within 30 days from the date of this memorandum. The court's opinion shall address Section 2511(a)(1), (2), and (b), with appropriate findings, credibility determinations, and analysis. Mother's counsel shall have 20 days, following the filing of the orphans' court's opinion, to determine if a new **Anders** or advocate's brief is necessary.[7] Should Mother's counsel file a new brief, the Agency and the participants will have 20 days thereafter to respond.

Case remanded with instructions. Petition to withdraw deferred until remand is complete. Jurisdiction retained.

---

[7] Should Mother's counsel determine that a new brief is not necessary, counsel shall file a letter in this Court informing us that no new brief will be filed.